# UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF WISCONSIN

ROBBIN BRICKLER,

    Plaintiff,

    v.                                  Case No. 24-CV-491-SCD

BUILDING TRADES UNITED PENSION TRUST and
BUILDING TRADES UNITED PENSION TRUST ELIGIBLE COMMITTEE,

    Defendants.

## DECISION AND ORDER
## GRANTING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

Robbin Brickler claims that the Building Trades United Pension Trust and, seemingly, its Eligibility Committee[1] wrongfully suspended his early retirement benefits in violation of the Employee Retirement Income Security Act (ERISA). The defendants filed a motion for summary judgment, arguing that Brickler failed to exhaust his administrative remedies, and in any event, that each of Brickler's five claims fails as a matter of law. As explained herein, there is not a genuine dispute of material fact, and the defendants are entitled to judgment as a matter of law. Accordingly, I will grant their motion for summary judgment in its entirety.

## BACKGROUND

Brickler applied for an "Early Deferred Vested Benefit" in March 2020. ECF Nos. 20 at ¶ 4, 27 at ¶ 4. Brickler claims that, prior to filing the application, he called a telephone number on the pension fund's website and had a conversation with someone who identified

---

[1] The defendants contend that there is no such entity as the Building Trades United Pension Trust Eligibility Commission but acknowledge that the pension fund has an Eligibility Committee that was involved in determining Brickler's eligibility for benefits. *See* ECF No. 30 at ¶ 5. Ultimately, the distinction is irrelevant to the outcome of this matter.

himself as a pension fund trustee. ECF Nos. 20 at ¶ 28, 32; 27 at ¶ 28, 32; *see also* ECF No. 22-1 at 18:17–21:23. According to Brickler, that individual advised him that working as a dump truck driver for Lake Edge Logistics (his then-current employer) would not violate union rules and that Brickler would be eligible for early retirement benefits. ECF Nos. 22-1 at 26:6–29:17. Brickler has no written evidence related to this conversation. ECF Nos. 20 at ¶ 46, 27 at ¶ 46.

On June 1, 2020, the pension fund's trustees approved Brickler's application for early retirement benefits. ECF Nos. 20 at ¶ 5, 27 at ¶ 5. In December 2021, Brickler started working for Oakes Transport, and he continued to work there as of August 2022. *Compare* ECF Nos. 20 at ¶ 23, 27 at ¶ 23, *with* Admin. R., ECF No. 17 at 12, 55; ECF No. 26 at 3 (the administrative record and Brickler's brief in opposition confirm this timeline despite Brickler's denial of the defendants' proposed finding of fact).

On August 29, 2022, the pension fund notified Brickler by letter that his work as a dump truck driver constituted "Plan Related Employment"—such that Brickler was subject to the pension plan's benefit suspension rules starting in 2023—but that the pension fund would not seek to recover any benefits that had already been paid to Brickler. ECF Nos. 20 at ¶ 7, 27 at ¶ 7. The letter also (1) informed Brickler of his right to appeal to the Eligibility Committee, (2) advised that Brickler had the right to file a lawsuit once he exhausted the plan's claims and appeals procedures, and (3) included a copy of the plan's benefit review procedures. ECF Nos. 20 at ¶ 8, 27 at ¶ 8.

On November 19, 2022, Brickler appealed to the Eligibility Committee. ECF Nos. 20 at ¶ 9, 27 at ¶ 9. On March 13, 2023, the pension fund notified Brickler that the Eligibility Committee upheld its previous determination that his work as a dump truck driver was Plan Related Employment. ECF Nos. 20 at ¶ 10, 27 at ¶ 10. Again, the notice attached the plan's

benefit review procedures, and it advised Brickler that he could appeal this decision to the Executive Committee and had the right to bring a civil action upon exhaustion of the plan's claims and appeals procedures. ECF Nos. 20 at ¶¶ 10–11, 27 at ¶¶ 10–11; *see also* ECF No. 17 at 32–48. Brickler did not file a second-level appeal to the pension fund's Executive Committee. ECF Nos. 20 at ¶ 12, 27 at ¶ 12.

In April 2024, Brickler filed a complaint in federal district court against the pension fund's trust and the trust's "Eligible Committee." *See* ECF No. 1. In the complaint, Brickler alleges that the defendants: (1) improperly suspended Brickler's pension payments pursuant to 29 C.F.R. § 2530.203.3; (2) made an arbitrary and capricious decision to suspend Brickler's early retirement benefits; (3) breached their fiduciary duties to Brickler by determining that his early retirement benefits should be suspended; (4) should be estopped from suspending Brickler's benefits as a result of their assurances and promises that he could work at Lake Edge Logistics; and (5) breached their duty of fair representation because other similarly-situated early retirees have been allowed their early retirement benefits, while working in similar professions. *See id.*

The clerk randomly assigned the matter to me, and all parties consented to the jurisdiction of a magistrate judge under 28 U.S.C. § 636(c) and Fed. R. Civ. P. 73(b). *See* ECF Nos. 2, 6. The defendants filed a motion for summary judgment under Rule 56 of the Federal Rules of Civil Procedure on January 24, 2025. *See* ECF No. 18. Brickler filed a brief in opposition, ECF No. 26, and the defendants filed a reply brief, ECF No. 29.

**SUMMARY JUDGMENT STANDARD**

"The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."

Fed. R. Civ. P. 56(a). "Material facts" are those that, under the applicable substantive law, "might affect the outcome of the suit." *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A dispute over a material fact is "genuine" "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.*

A moving party "is 'entitled to a judgment as a matter of law'" when "the nonmoving party has failed to make a sufficient showing on an essential element of [its] case with respect to which [it] has the burden of proof." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). Still,

> a party seeking summary judgment always bears the initial responsibility of informing the district court of the basis for [her] motion, and identifying those portions of the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, which [she] believes demonstrate the absence of a genuine issue of material fact.

*Id.* (internal quotation marks omitted).

To determine whether a genuine issue of material fact exists, I must review the record, construing all facts in the light most favorable to the nonmoving party and drawing all reasonable inferences in that party's favor. *See Heft v. Moore*, 351 F.3d 278, 282 (7th Cir. 2003) (citing *Anderson*, 477 U.S. at 255). "However, [my] favor toward the nonmoving party does not extend to drawing inferences that are supported by only speculation or conjecture." *Fitzgerald v. Santoro*, 707 F.3d 725, 730 (7th Cir. 2013) (quoting *Harper v. C.R. Eng., Inc.*, 687 F.3d 297, 306 (7th Cir. 2012)). That is, "to survive summary judgment, the non-moving party must establish some genuine issue for trial 'such that a reasonable jury could return a verdict' in [its] favor." *Id.* (quoting *Makowski v. SmithAmundsen LLC*, 662 F.3d 818, 822 (7th Cir. 2011)).

4

## DISCUSSION

The defendants argue that Brickler failed to exhaust his administrative remedies, and in any event, that each of Brickler's five claims fail as a matter of law. *See* ECF No. 19. Although Brickler does not challenge the defendants' exhaustion argument, I still must determine whether summary judgment is appropriate. *See* ECF No. 26.

## I.    Administrative Exhaustion

The defendants argue that Brickler's claims are barred for failure to exhaust administrative remedies before filing this lawsuit. ECF No. 19 at 3–6. Brickler does not argue that he exhausted his administrative remedies, or that I should excuse the exhaustion requirement. *See* ECF No. 26. Therefore, Brickler has waived this argument by not even attempting to rebut it.[2] *See Nichols v. Michigan City Plant Plan. Dep't*, 755 F.3d 594, 600 (7th Cir. 2014) ("The non-moving party waives any arguments that were not raised in its response to the moving party's motion for summary judgment."). Regardless, I must determine whether the defendants have adequately established their entitlement to judgment. *See Raymond v. Ameritech Corp.*, 442 F.3d 600, 608 (7th Cir. 2006) ("The ultimate burden of persuasion remains with [the movants] to show that [they are] entitled to judgment as a matter of law.") (citing *Wienco, Inc. v. Katahn Assocs., Inc.*, 965 F.2d 565, 568 (7th Cir. 1992)).

"Although ERISA's text is silent on the issue, [the Seventh Circuit has] long held that the decision to require exhaustion as a prerequisite to bringing suit is a matter within the sound discretion of the trial court." *Orr v. Assurant Emp. Benefits*, 786 F.3d 596, 601–02 (7th

---

[2] Brickler alleges that the Eligibility Committee is closely tied to the Pension Trust, "raising questions about impartiality." ECF No. 26 at 10. Brickler suggests that financial difficulties motivated the Eligibility Committee's decision, and therefore, the Fund's decision was "unreasonable and an abuse of discretion." *Id.* Brickler cites no evidence that the Fund experienced financial difficulties. *See id.* Even if he did, Brickler would need to provide evidence of causation, not just correlation to the suspension of his benefits. Brickler does not attempt to link this undeveloped impartiality argument, or any others, to the issue of exhaustion. *See id.*

Cir. 2015) (citations omitted); *see also Schorsch v. Reliance Standard Life Ins. Co.*, 693 F.3d 734, 739 (7th Cir. 2012) ("Although ERISA does not require administrative exhaustion as a prerequisite to suit, '[the Seventh Circuit has] interpreted ERISA as requiring exhaustion of administrative remedies as a prerequisite to bringing suit under the statute.'" (quoting *Edwards v. Briggs & Stratton Ret. Plan*, 639 F.3d 355, 360 (7th Cir. 2011)). "In addition, an exhaustion requirement may arise from contract, i.e., the plan documents themselves." *Rivera v. Network Health Plan of Wisconsin, Inc.*, No. 02-C-1055, 2003 WL 22794439, at *9 (E.D. Wis. July 11, 2003) (citing *Conley v. Pitney Bowes*, 34 F.3d 714, 716 (8th Cir. 1994)). "Generally, a failure to exhaust administrative remedies will be excused in few limited circumstances—when resort to administrative remedies would be futile, when the remedy provided is inadequate, or where there is a lack of access to meaningful review procedures." *Orr*, 786 F.3d at 602 (internal citations omitted).

Here, the parties agree that the pension fund's benefit review procedures, which are a part of the Plan, provide a participant with two levels of administrative appeals—first to the Eligibility Committee and then to the Executive Committee. ECF No. 27 ¶ 1. More specifically, the benefit review procedures outline that the review procedures "must be followed and exhausted before any Participant may institute any legal action (including actions or proceedings before administrative agencies) with respect to a claim concerning his eligibility for or amount of, his Benefits from and under the Fund or Plan." ECF No. 17 at 21–22.

Brickler does not contest that each claim asserted in this legal action concerns his eligibility for benefits. *Compare* ECF No. 19 at 5–6, *with* ECF No. 26. Furthermore, Brickler admits that he did not file a second-level appeal to the pension fund's Executive Committee.

ECF No. 27 ¶ 12. Therefore, I find that Brickler failed to exhaust his administrative remedies prior to filing suit. *See Orr*, 786 F.3d at 601–03 (affirming court's grant of summary judgment because the plaintiffs filed suit before completing the second level of administrative review and had not established grounds for excusing that failure to exhaust their remedies). I will not excuse Brickler's failure to exhaust his administrative remedies. "Courts do not sit to make arguments for a party that the party, itself, did not make." *Sapia v. Bd. of Educ. of City of Chi.*, 329 F.R.D. 585, 587 (N.D. Ill. 2019) (citing *Sanchez v. City of Chi.*, 700 F.3d 919, 934 n.4 (7th Cir. 2012)). Accordingly, I find that Brickler's failure to exhaust his administrative remedies bars this lawsuit in its entirety.

## II.     Merits Analysis of Plaintiff's Barred Claims

The defendants argue that Brickler's claims fail on the merits even if he had exhausted his administrative remedies. *See* ECF No. 19. I will address each of the five claims in turn.

### A.  Improper Suspension of Payments

Brickler pled a claim for improper suspension of his pension payments pursuant to 29 C.F.R. § 2530.203.3. ECF No. 1 ¶¶ 26–31. However, the Seventh Circuit has observed that this regulation "specifically excludes claimants who have not attained normal retirement age from its protection." *Militello v. Cent. States, Se. & Sw. Areas Pension Fund*, 360 F.3d 681, 685 (7th Cir. 2004). In fact, 29 C.F.R. § 2530.203–3(a) reads, in relevant part:

> A plan may provide for the suspension of pension benefits which commence prior to the attainment of normal retirement age, or for the suspension of that portion of pension benefits which exceeds the normal retirement benefit, or both, for any reemployment and *without regard to the provisions of section 203(a)(3)(B) and this regulation* to the extent (but only to the extent) that suspension of such benefits does not affect a retiree's entitlement to normal retirement benefits payable after attainment of normal retirement age, or the actuarial equivalent thereof.

(emphasis added).

7

Brickler appears to argue that he triggers the exception for the suspension's effect on his entitlement to normal retirement benefits because his election of early retirement benefits triggered a permanent cut to the amount of benefits he will be entitled to upon attaining the normal retirement age. *See* ECF No. 26 at 6–7. But Brickler clearly acknowledges that his election of the early payout triggered the reduction—not the Plan's suspension scheme. *See id.* Brickler otherwise makes no effort to overcome the controlling Seventh Circuit precedent. *Compare* ECF No. 26, *with Militello*, 360 F.3d at 691 (disposing "easily" of the claim under 29 C.F.R. § 2530.203–3 because the plaintiff had not attained the normal retirement age). Ultimately, Brickler agrees that normal retirement age under the Plan is sixty-five years old but that he will not reach that age until 2027. *See* ECF Nos. 20 at ¶¶ 29–30, 27 at ¶¶ 29–30. Given the controlling precedent, the regulation does not apply to Brickler.

B. *Arbitrary and Capricious Decision-Making*

Brickler alleges that the defendants made an arbitrary and capricious decision to suspend his early retirement benefits. *See* ECF No. 1 at ¶¶ 32–38. Brickler muddies the water by interlacing his arbitrary and capricious argument with references to the Eighth Circuit's definition of the abuse of discretion standard of review. *See id.* at 7–8; *see also Meyers v. Hartford Life & Acc. Ins. Co.*, 489 F.3d 348, 351 (8th Cir. 2007). But Brickler's claim for improper suspension of payments is clearly subject to an arbitrary and capricious standard of review, given the Plan's broad and explicit grant of discretion to the trustees. *See* ECF No. 17 at 205 (section of the pension fund's Plan granting the trustees "sole and absolute discretion"); *Militello*, 360 F.3d at 685 ("If the plan confers discretionary authority, then a denial of benefits will be reviewed under an arbitrary and capricious standard."). In any event, the Seventh Circuit has observed that the distinction between the "arbitrary and capricious" standard of

8

review and the "abuse of discretion" standard of review "appears to be a distinction without a difference." *Fritcher v. Health Care Serv. Corp.*, 301 F.3d 811, 816 n.4 (7th Cir. 2002).

"Review under [the arbitrary and capricious] standard is extremely deferential and has been described as the least demanding form of judicial review." *Cozzie v. Metro. Life Ins. Co.*, 140 F.3d 1104, 1107 (7th Cir. 1998). "Under the arbitrary and capricious standard, [the courts] do not ask whether the administrator reached the correct conclusion or even whether it relied on the proper authority. Instead, the only question for [the court] is whether the administrator's decision was completely unreasonable." *Kobs v. United Wis. Ins. Co.*, 400 F.3d 1036, 1039 (7th Cir. 2005) (internal citation omitted). "If the administrator's decision 'was made rationally and in good faith, [the court] will not second-guess whether the decision is right.'" *Est. of Gifford v. Operating Eng'rs 139 Health Benefit Fund*, 126 F.4th 509, 517 (7th Cir. 2025) (quoting *Hightshue v. AIG Life Ins. Co.*, 135 F.3d 1144, 1147 (7th Cir. 1998)). In making that determination, courts "consider factors like whether the Board of Trustees: (1) communicated specific reasons for its determination; (2) afforded the claimant an opportunity for a full and fair review; and (3) whether there was an absence of reasoning to support its determination." *Id.*

Here, the defendants argue that the trustees reached a reasonable conclusion that Brickler's work as a dump truck driver constituted Plan Related Employment that subjected Brickler to the pension fund's suspension of benefits rules. ECF No. 19 at 8–10. Brickler does not allege any of the aforementioned factors, arguing instead that the trustees' decision was wrong because: (1) the trustees never found his prior work as a dump truck driver constituted Plan Related Employment, (2) the skills he employed as a dump truck driver were not skills that he acquired while working for a Union employer, (3) employment that is not subject to

9

a collective bargaining agreement should not be considered plan-related, and (4) the trustees'

decision "appears motivated by financial difficulties within the Fund." ECF No. 26 at 9–10.

The parties agree that employment must satisfy three requirements before it falls within

the Plan's definition of Plan Related Employment:

> First, the Participant must work in the same industry involving the same business activities as employees covered by the Plan were employed when benefits commenced. Second, the Participant must work in the same trade or craft (as defined 5 by 29 C.F.R. §2530.203-3) as is covered under a collective bargaining agreement requiring the employer to contribute to the Pension Fund. Third, the work must be performed in Wisconsin.

ECF Nos. 20 at ¶ 21, 27 at ¶ 21 (citing Administrative Record, ECF No. 17 at 208–09).

The trustees suspended payments upon their determination that Brickler engaged in

Plan Related Employment but did not request that Brickler return any prior benefits—despite

Brickler's concession that he had been doing the same type of work since he applied for early

retirement benefits. *See* ECF No. 26 at 9; *see also* ECF Nos. 17 at 15, 20 at ¶ 7, 27 at ¶ 7. While

the different treatment is understandably perplexing, Brickler does not logically explain what

legal bearing his prior employment has on whether the relevant period of work constituted

Plan Related Employment subject to suspension of benefits. *See* ECF No. 26. Therefore,

Brickler's first argument about prior work does not generate a dispute of material fact.

As to Brickler's second argument, the language of the Plan clearly establishes a broad

concern with the work of employees covered by the Plan, such that Brickler's contention

regarding his specific trade skills is irrelevant. *See* ECF No. 26 at 9. Moreover, the Plan

explicitly states that its three requirements satisfy the definition of Plan Related Employment

"regardless of whether such employment is subject to any collective bargaining agreement."

ECF No. 17 at 209 (Art. X, Sec. 4B(a)(4) of the Plan). This clear contractual language

eliminates Brickler's third argument that his work as a dump truck driver should not be

considered plan related because his employer did not have a collective bargaining agreement. *See* ECF No. 26 at 9. Finally, I find that Brickler's contention that the trustees were motivated by financial difficulties fails because he provided no supporting evidence. *See Beardsall v. CVS Pharmacy, Inc.*, 953 F.3d 969, 973 (7th Cir. 2020) ("Summary judgment is the proverbial put up or shut up moment in a lawsuit, when a party must show what evidence it has that would convince a trier of fact to accept its version of the events.").

Pursuant to Section 1.2 of the Building Laborers Agreement, work covered by the Agreement includes "conveying materials to be used by mechanics of other crafts" by trucks or other motorized units. ECF No. 17 at 60. Brickler described his work for Oakes Transport as working for a construction company by delivering dirt, stone, concrete, and asphalt to various sites, including in Wisconsin. ECF Nos. 20 at ¶ 24, 27 at ¶ 24. These facts support a rational conclusion that Brickler worked in Wisconsin in the same industry as employees who *could* be qualified by the Plan. However, the defendants have not pointed to any evidence to establish the latter portions of the first and second elements—that "employees covered by the Plan were employed when benefits commenced" and that the trade or craft was "covered under a collective bargaining agreement requiring the employer to contribute to the Pension Fund." The fact that the Plan includes such industries does not mean that it actively had any collective bargaining agreement within that trade or craft.[3] Making this leap in logic without such evidence would be completely unreasonable. *See Bator v. Dist. Council 4*, 972 F.3d 924, 929 (7th Cir. 2020) (observing that "if the Trustees "def[y]" the "plan's plain language," that decision is arbitrary and capricious"). Therefore, had Brickler exhausted his administrative

---

[3] The Eligibility Committee explained via letter to Brickler "that driving a dump truck for Lake Edge Logistics and Oakes Transport would fall under the Trade or Craft test in Article X, Section 4(B)(a)(2) *because the Fund receives contributions on behalf of individuals who perform that type of work*." ECF No. 17 at 33 (emphasis added). But the defendants do not point to any evidence in the record backing up the receipt of such contributions.

11

remedies, I would have to deny the defendants' motion for summary judgment on count two for failure to meet their evidentiary burden.

### C. Breach of Fiduciary Duty

The defendants argue that Brickler's claim for breach of fiduciary duty would fail because it is duplicative of the claim for early retirement benefits that he alleged in count two. ECF No. 19 at 14. Brickler argues that he can seek money damages as an equitable remedy if he can demonstrate that the defendants breached their fiduciary duty and that breach caused him damages. ECF No. 26 at 12.

"[T]he fiduciary concept is equitable," and 29 U.S.C. § 1132(a)(3) of ERISA authorizes civil actions seeking equitable relief. *Bowerman v. Wal-Mart Stores, Inc.*, 226 F.3d 574, 592 (7th Cir. 2000). However, "[e]quitable relief under section 1132(a)(3) is available only when Congress did not provide relief elsewhere. Section 1132(a)(1)(B) offers damages, so equitable relief is not available for the same conduct." *Griffin v. TeamCare*, 909 F.3d 842, 846 (7th Cir. 2018) (internal citations omitted). Section 1132(a)(1)(B) authorizes a plaintiff to seek recovery of benefits due to him under the terms of his plan. Because that recovery is exactly the remedy Brickler seeks in count two, his fiduciary claim is duplicative and would be dismissed as a matter of law. *See* ECF No. 1 at ¶¶ 32–43.

That being said, the defendants acknowledge that Brickler could have stated a claim for breach of fiduciary duty based on the trustees' failure to adequately prepare staff to respond to participant inquiries—since Brickler alleges that a pension fund trustee advised him that he would be entitled to benefits during a phone conversation, and I must take the facts in the light most favorably to Brickler at this stage. *See* ECF No. 19 at 11. However, Brickler made no attempt to link the alleged trustee advice to a breach of fiduciary duty in his

complaint, much less to allege that the defendants failed to adequately train their representatives to prevent a misrepresentation. *See* ECF No. 1 at ¶¶ 39–43; *see also Kenseth v. Dean Health Plans, Inc.*, 722 F. 3d 869, 886–87 (7th Cir. 2013) (acknowledging "an obligation for plan fiduciaries to anticipate inquiries and train staff accordingly"). Brickler has not formally moved to amend the pleadings and cannot add such a claim now via responsive briefing. *See Anderson v. Donahoe*, 699 F.3d 989, 997 (7th Cir. 2012) ("[A] plaintiff 'may not amend his complaint through arguments in his brief in opposition to a motion for summary judgment.'") (quoting *Grayson v. O'Neill*, 308 F.3d 808, 817 (7th Cir. 2002)).

  D. *Estoppel*

  Brickler pled a claim for equitable estoppel, arguing that the defendants should be estopped from suspending his early retirement benefits due to the alleged trustee's assurance that Brickler could work at Lake Edge Logistics without consequence to said benefits. *See* ECF No. 1 at ¶¶ 44–48. The defendants argue that Brickler's estoppel claim would fail as a matter of law because Brickler has not established the "extreme circumstances" necessary to permit the estoppel of a plan's written terms. *See* ECF No. 19 at 19–20 (citing *Kannapien v. Quaker Oats Co.*, 507 F.3d 629, 636 (7th Cir. 2007) ("The written plan document ordinarily governs ERISA plan administration; statements or conduct by individuals implementing the plan can only estop an employer from enforcing the plan's written terms in 'extreme circumstances.'").

  "In order to prevail on an estoppel claim under ERISA, [courts] ordinarily require that plaintiffs show: (1) a knowing misrepresentation; (2) made in writing; (3) reasonable reliance on that representation by them; (4) to their detriment." *Kannapien*, 507 F.3d at 636. The defendants point out that Brickler has not produced any evidence that he received the alleged

13

misrepresentations in writing. *See* ECF No. 19 at 20. Brickler ignores the writing contention, citing other caselaw on estoppel that did not involve claims under ERISA. *See* ECF No. 26 at 14–15. But the Seventh Circuit has "consistently required that modifications to an ERISA plan must be in writing because ERISA exists, in part, to protect the financial integrity of pension and welfare plans by confining the payment of benefits to a plan's written terms." *Kannapien*, 507 F.3d at 636 (citations omitted). Accordingly, "[o]ral misrepresentations may become grounds for ERISA estoppel only where plan documents are ambiguous or misleading." *Id.* at 637.

Here, Brickler alleges that the trustee with whom he spoke on the phone advised that Brickler's work would not be deemed Plan Related Employment because his employer did not contribute to the pension fund or have covered employees. *See* ECF Nos. 26 at 13, 28 at ¶¶ 15–16. This advice about non-union work contradicts the plain language of the Plan, which states that work may constitute Plan Related Employment "regardless of whether such employment is subject to any collective bargaining agreement." ECF No. 17 at 209 (Art. X, Sec. 4B(a)(4) of the Plan). Because the Plan's language is not ambiguous, the alleged oral misrepresentation would be insufficient to state a claim for estoppel. *See Kannapien*, 507 F.3d at 636.

### E. Breach of Duty of Fair Representation

In count five, Brickler alleges that the defendants breached the duty of fair representation by suspending his early retirement benefits but not suspending those of other similarly situated early retirees working in similar professions. ECF No. 1 at ¶¶ 49–55. The defendants argue that they do not owe a duty of fair representation, and in any event, that Brickler failed to state a claim for discrimination. ECF No. 19 at 20–22. Brickler fails to address these arguments in his opposition briefing (or to advance this claim at all), and this

14

silence means that Brickler has waived any challenge to the contrary. *See Bonte v. U.S. Bank, N.A.*, 624 F.3d 461, 466 (7th Cir. 2010) ("Failure to respond to an argument . . . results in waiver.").

Even considering the merits of a fair representation claim, Brickler fares no better. The defendants are correct that "[t]he duty of fair representation arises out of a union's role as the exclusive representative of all employees in a collective bargaining unit." *See* ECF No. 19 at 20; *Taha v. Int'l Bhd. of Teamsters, Loc. 781*, 947 F.3d 464, 469 (7th Cir. 2020). "Because a union serves as the exclusive bargaining agent for those employees, it has a corresponding legal obligation 'to serve the interests of all members without hostility or discrimination toward any, to exercise its discretion with complete good faith and honesty, and to avoid arbitrary conduct.'" *Id.* (quoting *Vaca v. Sipes*, 386 U.S. 171, 177 (1967)). Here, Brickler has sued the pension fund trust and its eligibility committee. But "[a] pension or welfare trust is a third-party beneficiary of the collective bargaining agreement." *Robbins v. Lynch*, 836 F.2d 330, 333 (7th Cir. 1988). Because the defendants are not employee representatives, federal labor law does not impose a duty of fair representation. *See Taha*, 947 F.3d at 469.

Brickler's vague allegations of discriminatory conduct are insufficient to generate any other claim, especially given the silence on this point in Brickler's opposition briefing. *See United States v. Lanzotti*, 205 F.3d 951, 957 (7th Cir. 2000) ("It is not this court's responsibility to research and construct the parties' arguments."). Accordingly, Brickler's claim for breach of the duty of fair representation would also fail as a matter of law.

\* \* \*

In sum, Brickler did not even attempt to defend against the defendants' exhaustion argument and generated no genuine issue of material fact. Accordingly, Brickler's failure to

15

exhaust his administrative remedies bars this lawsuit in its entirety. Even if the lawsuit was not barred, four of Brickler's five claims would fail on the merits at this stage of the proceedings.

## CONCLUSION

For all the foregoing reasons, the court **GRANTS** the defendants' motion for summary judgment, ECF No. 18. The action is dismissed with prejudice. The clerk of court shall enter judgment accordingly.

**SO ORDERED** this 9th day of May, 2025.

_____
STEPHEN C. DRIES
United States Magistrate Judge

16